**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONICA GOITIA,

              **Plaintiff,**

-vs-                                  **Case No.  6:06-cv-6-Orl-31KRS**

STATE OF FLORIDA, DEPARTMENT OF
CHILDREN AND FAMILIES,

              **Defendant.**

_____

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 20) filed

by the Defendant, State of Florida, Department of Children and Families ("DCF"), and the

response (Doc. 27) filed by the Plaintiff, Monica Goitia ("Goitia").

**I.**       **Background**

Goitia began working for DCF in March 2003 as a Child Protective Investigator.  (Doc. 27

at 2).  Her employment was terminated in May 2004.  Goitia's supervisor at the time of her firing

was Jody Mahonik ("Mahonik").  Goitia, who was born in Puerto Rico, contends that Mahonik

repeatedly harassed her and eventually fired her on the basis of her national origin and because she

complained about the discrimination.  (Doc. 27 at 5).  DCF contends that Goitia was fired solely

due to her failure on a graded "test case"at the end of a 12-month probationary period.  (Doc. 20 at

5).  Goitia filed suit on January 3, 2006, contending that DCF's actions constituted national origin-

based discrimination and retaliation in violation of Title VII and the Florida Civil Rights Act

("FCRA").

**II.     Standards**

**A.     Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Whether a fact is material depends on the substantive law of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial.  *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1]

---

[1]All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

## B.       Direct Versus Circumstantial Evidence

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, prohibits

discrimination on the basis of race, color, religion, sex, or national origin.  More specifically, that

section makes it illegal for an employer to "fail or refuse to hire or discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin."[2]  To establish a Title VII discrimination claim, a plaintiff may present proof of

discriminatory intent through direct or circumstantial evidence.  *E.E.O.C. v. Joe's Stone Crab,*

*Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).  "Direct evidence is evidence that establishes the

existence of discriminatory intent behind the employment decision without any inference or

presumption."  *Id.* (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.

1998)).  In regard to comments, for instance, "only the most blatant remarks, whose intent could

mean nothing other than to discriminate on the basis of some impermissible factor, constitute

direct evidence of discrimination."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir.

2004) (internal citation and quotation omitted).  Comments or conduct falling short of this mark

are, at best, circumstantial evidence.  *See id.*

---

[2]Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA because the Florida act was patterned after Title VII. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (listing cases and stating that no Florida court has interpreted the FCRA to impose substantive liability where Title VII does not).  Neither party has identified any difference between the two acts that is material to the instant motion.  For these reasons, the Court will analyze the Plaintiff's FCRA claims together with her Title VII claims.

### C.  Disparate Treatment

Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts.  *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1265 (11th Cir. 1996).   In a case where there is no direct evidence of disparate treatment, a court is to analyze whether summary judgment is appropriate under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Under that framework, the plaintiff first bears the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *Wilson*, 376 F.3d at 1087.  A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.  *Id.*  When the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  The employer need not persuade the court that it was actually motivated by the proffered reason.  *Id.*  If the  proffered reason might motivate a reasonable employer, the presumption of discrimination is rebutted.  *Id*.  The plaintiff must meet any such proffered reason head-on, rather than quarrel with its reasonableness, and prove that it is a pretext – *i.e.*, that the proffered reason did not honestly motivate the employer.  *Id.  See also Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that, regardless of whether the proffered reason is unfair, heavy handed, or based on erroneous facts, the inquiry is limited to whether the employer "gave an honest explanation of its behavior.") (internal citations omitted).

### D.   Hostile Work Environment

To sustain a hostile work environment claim under Title VII, a plaintiff must establish (1) that he or she belongs to a protected group; (2) that he or she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1279-80 (11th Cir. 2003). In evaluating the severity and pervasiveness of the harassment, a court should consider, among other factors, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Title VII is implicated where the workplace is permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an epithet. *Id.* at 1276-77 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

### E.   Retaliation

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events. *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994). To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct and that the protected activity and the adverse action were not "wholly unrelated." *Gupta*, 212 F.3d at 590.

For purposes of a *prima facie* case, close temporal proximity may be sufficient to show that the protected activity and adverse action were not wholly unrelated. *Id.*

To recover for retaliation, a plaintiff need not prove the underlying claim of discrimination that led to her protest, so long as she had a reasonable good-faith belief that the discrimination existed. *Id.* Once the prima facie case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* As with a Title VII discrimination claim, the employer's burden is "exceedingly light." *Id.* The plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation; the burden of production shifts, but the burden of persuasion remains with the plaintiff. *Id*.

### F.    Adverse employment action

An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta*, 212 F.3d at 587 (internal citation and quotation omitted). In determining whether an action other than an ultimate employment decision is sufficiently substantial to constitute an adverse employment action, the Court must keep in mind that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Id.* The determination must be made on a case-by-case basis, using both a subjective and objective standard. *Id*.

### III.    Analysis

#### A.    Direct Evidence

Goitia claims to possess direct evidence of discrimination in the form of "ongoing and repeated discriminatory statements," by Mahonik about the use of the Spanish language in the workplace.  Goitia's evidence consists primarily of her testimony regarding two incidents involving Mahonik.  In the first, Mahonik allegedly entered Goitia's office while Goitia was conversing on the telephone with a Spanish-speaking client and told her not to speak Spanish "because I can't understand what you are saying."  (Goitia Depo. at 77).  In the second, while in Mahonik's presence, Goitia spoke Spanish to a third party.  Mahonik allegedly told Goitia "Watch yourself with me, missy.  I told you not to talk Spanish because we are in the United States." (Goitia Depo. at 77-78).  Goitia also testified that Mahonik "was constantly repeating" the demand that Goitia not speak Spanish.  (Goitia Depo. at 78).  Goitia's co-worker, Thomas H. Burnett ("Burnett"), testified that Mahonik told DCF employees who were conversing in Spanish that, in essence, they should be speaking English because they were in America.  (Burnett Depo. at 54).

Goitia contends that this is direct evidence that a decisionmaker in her case acted with a discriminatory motive.  However, although there is no dispute that Mahonik was a decisionmaker in the instant case, the statements described above are not direct evidence.  Although it is possible that Mahonik disliked the Spanish language because she disliked people of Hispanic origin, that is not the only possible reason for such statements.  Among numerous other possible explanations, Mahonik might have thought that the use of English around the DCF office would result in fewer misunderstandings.  In any event, concluding that Mahonik's preference for English resulted from an antipathy toward people born in a certain country requires an inference, which relegates the

testimony regarding Mahonik's alleged ban on Spanish speaking to the realm of circumstantial

evidence.[3]

### B.    Disparate treatment

The Defendant does not dispute Goitia's membership in a protected class or her

qualifications for her job up to the point where she failed the test case.  To support her contention

that she was treated differently than other comparable employees, Goitia points to testimony from

Burnett that during his 14 months at DCF he was aware of only one other person completing a test

case; that this other individual apparently got a time extension; and that he did not know of any

other DCF employees who were terminated for failing to complete a test case.  (Doc. 27 at 12).  In

addition, Goitia claims that Burnett, a white male, was also not fired for failing to complete his test

case.[4]  (Doc. 27 at 12).

Normally, a plaintiff cannot rely on hearsay to avoid summary judgment absent a showing

that the evidence will be reduced to an admissible form at trial.  *Pritchard v. Southern Co.*

*Services*, 92 F.3d 1130, 1135 (11th Cir. 1996) .  There has been no such showing here.  But

Burnett's hearsay testimony, even if were admissible, is insufficient to show that Goitia was

---

[3]*See also Garcia v. Gloor*, 618 F.2d 264, 270-71 (5th Cir. 1980) (concluding that employer's requirement that bilingual employees speak only English in the workplace during work hours did not constitute discrimination on the basis of national origin).

[4]Goitia did not merely fail to complete her test case.  She turned it in, but she was given a failing grade by both Mahonik and an independent evaluator, David McKenzie.  (Doc. 22-3). According to Mahonik, satisfactory completion of the test case was a prerequisite to becoming certified, and DCF policy was to fire anyone who did not become certified within one year.  (Doc. 23-2 at 2).  Therefore the Court will assume that evidence about how DCF treated employees who did not complete their test cases is relevant to the issue of how DCF treated Goitia when she received a failing grade on her test case.

treated differently than other similarly situated employees. There is no evidence that Burnett was

in a position to know whether other employees were completing their test cases within the required

time frame or being fired for not doing so. As such, his lack of awareness regarding these points

establishes nothing. There is no evidence that Goitia was denied an extension to complete her test

case, and therefore Burnett's testimony that "[i]t seems to me that I heard that they had granted

six-month extensions for two or three people who for whatever reason didn't get their test case

finished on time" (Burnett Depo. at 42) is of no assistance to the Plaintiff. And Goitia's

contention regarding Burnett's test case is contradicted by his testimony that "I put my test case

together and turned it in in plenty of time to meet whatever time line that they had. And if they

had a problem with it, I could go back and correct it." (Burnett Depo. at 42-43). Finally, Goitia

has not produced any evidence as to the national origin of Burnett or any of the other employees

who allegedly received better treatment from DCF in regard to their performance on their test

cases.

Goitia also contends that she was subjected to disparate treatment in the form of

harassment by Mahonik due to her national origin and use of the Spanish language. (Doc. 27 at

11). However, the evidence would not support a conclusion that this harassment was severe or

pervasive enough to constitute a hostile work environment. The two incidents recounted above, in

which Mahonik allegedly told Goitia not to use Spanish, do not rise to the level of an offensive

utterance, much less physically threatening or humiliating conduct. Burnett testified that he

believed he saw Goitia reduced to tears twice by Mahonik, but he did not know any specifics as to

what had occurred before Goitia began crying. (Burnett Depo. at 56). Goitia contends that

Mahonik was repeatedly rude to her, utilizing "yelling and screaming" as her "primary method of

communicating with me." (Doc. 27-2 at 3).  However, she fails to provide any specifics from

which a reasonable jury could conclude that she was subjected to an abusive work environment, or

that discrimination is what motivated the alleged abuse, or that the alleged abuse unreasonably

interfered with her job performance.

As to both her wrongful termination and hostile work environment claims, the Court

concludes that Goitia has failed to demonstrate the existence of a genuine issue of material fact

sufficient to avoid summary judgment.

### C.    Retaliation

Goitia contends that, prior to her termination, she complained to the district Director of

Human Resources, Susan Peacock ("Peacock"), that Mahonik was discriminating against her.

(Doc. 27 at 5, 13).  Peacock disagrees, asserting that Goitia primarily voiced concerns about the

amount of stress and pressure in her job, and that though she did complain about Mahonik's

management style, she did not allege that Mahonik was engaged in discrimination.  (Doc. 22-5).

For purposes of resolution of this motion, the Court will accept Goitia's recollection of events as

true.

Goitia makes no effort in her brief to establish a causal link between her complaints to

Peacock and her termination, failing to even identify the time span between the former and the

latter.  Thus it does not appear that she has even established a *prima facie* case of retaliation.

Further, DCF contends that it had a legitimate, nondiscriminatory reason for the firing – Goitia's

failure of the test case – which Goitia fails to rebut.  Goitia suggests that the test case was a

pretext.  (Doc. 27 at 13).  But her evidence on this point is practically nonexistent.  In addition to

Burnett's testimony about deadline extensions and other employees not finishing their test cases,

which the Court has already determined is entitled to no weight, Goitia complains that she did not

receive proper supervision or feedback regarding the test case. (Doc. 27 at 6). Goitia offers no

explanation as to how her testimony supports a conclusion that her firing was pretextual, and the

Court simply does not see it. Establishing that the test case process was flawed is not enough to

establish that DCF did not rely on its results in determining whether to fire Goitia. Goitia has

failed to demonstrate the existence of a genuine issue of material fact as to whether her firing was

retaliatory.

## IV.      Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the

Motion for Summary Judgment (Doc. 20) is **GRANTED**. The case is removed from the

September 4, 2007 trial docket, and the Clerk is directed to enter judgment for the Defendant and

close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 24, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party